## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHWESTERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **SHEILA JOYCE GASAWAY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 3:13-cv-2154-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OF DECISION

Plaintiff Sheila Joyce Gasaway brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.     Proceedings Below

This action arises from Plaintiff's applications for disability, DIB, and SSI dated December 30, 2008,[1] alleging disability beginning on February 19, 2009.[2] (R. 11, 46, 85, 238-41,

---

[1] Previously, on March 20, 2007, Plaintiff filed applications for disability, DIB, and SSI. On May 30, 2007, those applications were denied. Plaintiff filed a written request for a hearing on June 1, 2007. Plaintiff's request was granted and a hearing was held on September 25, 2008. (R. 68, 92). The Administrative Law Judge ("ALJ") issued a decision on November 4, 2008 finding that Plaintiff was not disabled. (R. 104). The Appeals Council denied review of those applications on March 6, 2009. (R. 105).

[2] Plaintiff originally claimed her disability onset date was October 31, 2008. (R. 111, 238). During the hearing held August 14, 2012, the ALJ orally amended this date to February 29, 2009. (R. 46).

327).   The Social Security Administration initially denied Plaintiff's applications on March 13, 2009. (R. 11).   On March 25, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 147).   The request was granted and a hearing was held on December 9, 2010. (R. 48, 111).   The ALJ issued a decision denying Plaintiff's applications on January 19, 2011. (R. 120, 136-38).   Plaintiff appealed that decision to the Appeals Council on March 1, 2011. (R. 179).   In the meantime, on May 18, 2011, Plaintiff filed subsequent applications for disability, DIB, and SSI, which were initially denied on July 28, 2011.   In a review of those applications, the Appeals Council found them to be duplicative, and in an order dated February 2, 2012, remanded those applications and the ALJ's decision of January 19, 2011, directing the ALJ to issue new decisions evaluating Plaintiff's mental impairments, and to compare the criteria of her prior relevant work with her residual functional capacity. (R. 11, 120, 136-38).   Pursuant to the Appeal Council's order, a hearing was held on August 14, 2012.   A new decision was issued on August 31, 2012 denying Plaintiff's applications, finding that she was not entitled to disability, DIB or SSI under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act. (R. 11, 23).   Plaintiff appealed that decision to the Appeals Council on September 19, 2012. (R. 5).   On September 26, 2013, the Appeals Council issued a decision denying Plaintiff's request for review, thereby making the ALJ's decision the final decision, and therefore a proper subject of this court's appellate review. (R. 1-3).

At the time of Plaintiff's amended disability onset date of February 19, 2009, she was thirty-seven years old and had a limited education. (R. 22, 465).   Plaintiff has not engaged in substantial gainful activity since her disability onset date. (R. 13).   Plaintiff has previous work experience as a mobile home assembler, which is described as medium semi-skilled work in the Dictionary of Occupational Titles. (*Id*). Plaintiff claims she has not worked since 2005. (R. 310).

In her Function Report, Plaintiff states, among other things, that she cannot read or write well, is unable to finish things, cannot remember well, suffers from anxiety attacks, is uncomfortable around people, cannot lift items with her right hand, and cannot pay attention for more than a few seconds. (R. 300-07).

Plaintiff testified that her daily activities include lying on the couch until she goes to sleep at night, going to NA meetings sometimes twice a week, to church with her mother twice a month, does not go shopping, and that her daughter and mother bring groceries to her house. (R. 36-40). Plaintiff further testified that she takes Lortab 10, Cymbalta, Seroquel, and Xanax for her pain, and that her mother pays for her medication. (R. 41). Plaintiff described her pain (with the benefit of medication) on an average day at a six on a scale of zero to ten.[3] (R. 40-41).

Plaintiff's past medical history is extensive. In 1988, Plaintiff sustained an injury to her right wrist and has undergone multiple surgeries since that time. (R. 17, 463-65). A subsequent x-ray of her right hand in May 2009 revealed no acute fracture and only an old fusion of the right wrist. (R. 17, 545). Further, subsequent temporary injuries[4] to Plaintiff's right hand were described as "mild." (R. 538). Despite these injuries, clinical examinations showed little abnormality in regards to her right wrist function. (R. 17, 545).

Plaintiff retained Dr. Morrow who expressed his view that Plaintiff "had multiple medical problems which include: Back pain, Traumatic Arthritis, Bipolar Disorder, Anxiety and Depression." (R. 556). Dr. Morrow also opined in a referral note dated October 8, 2009 that

---

[3] In a previous hearing held December 9, 2010, Plaintiff stated her pain level as a six without medication and a two with medication. (R. 61).

[4] Plaintiff "experienced further trauma to her [right] hand including her hand being caught in the door in May 2009 and superficial burns to her right hand in August 2009." (R. 17, 524, 536-38).

Plaintiff "appears to be permanently & totally disabled."  (R. 549).  In addition, on March 23, 2010, he sent a formal letter addressed to Plaintiff which expressed this same opinion. (R. 556).

Plaintiff was also examined by Drs. Gillis, Reddy, and Haney. (R. 20-21, 464-67, 362-69, 588-92, 619-30).  Dr. Gillis noted after his examination of Plaintiff on February 19, 2009, that Plaintiff had "[s]evere degenerative changes [to her right wrist] with virtual effusion of the radio carpal joint." (R. 464).  The only portion of Dr. Gillis' records that denote mental issues is a subjective statement by Plaintiff.  Dr. Gillis wrote, "[Plaintiff] states that she still has severe psychological disabilities." (R. 465).

On July 14, 2011, Dr. Reddy examined Plaintiff and concluded that she would be physically able to work but a psychological evaluation would be needed for determination of any mental impairment. (R. 589-91).  Then, on July 28, 2011, Dr. Haney performed an examination of Plaintiff and opined that her ability to function in most jobs was moderately to severely impaired due to physical, emotional, and vocational limitations. (R. 21, 593-95).

In addition, Plaintiff was examined by Drs. Rankart and Estock.  Dr. Rankart examined Plaintiff on March 13, 2009 and found that Plaintiff was no more than moderately limited and specifically found that she was "[a]ble to comprehend and recall brief and uncomplicated directions [and] able to carry out short and simple instructions." (R. 494-97).  Dr. Estock examined Plaintiff on July 28, 2011 and found that the she was no more than moderately limited and specifically found that she could understand and remember simple instructions and attend to simple work tasks for two hour periods throughout an eight hour workday. (R. 614-17).

During the hearing on August 14, 2012, a Vocational Expert ("VE"), who had reviewed Plaintiff's medical records, was present and was questioned by the ALJ as to Plaintiff's ability to perform her past relevant work. The VE testified that Plaintiff would be able to return to her past

work, which is classified at the medium level. (R. 44). Additionally, the VE testified that there is a "wide range" of unskilled and light unskilled jobs that Plaintiff could do, such as a hand packager, production inspector, or a garment folder. (*Id*.). However, the VE stated that if Plaintiff's testimony was deemed credible, she would not be able to perform her past relevant work. (R. 44-45). Nevertheless, the VE also testified that, if Plaintiff's testimony regarding her pain is accurate, she "would generally be considered [to be experiencing] a moderate level of pain . . . not necessarily disabl[ing]." (*Id*.).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*). Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ

must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  (*Id.*).  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability and that she meets the insured status requirements of the Social Security Act through March 31, 2009.  (R. 13).  The ALJ further determined that Plaintiff suffers from the following severe impairments: major depressive disorder; traumatic arthritis of right wrist status post multiple surgeries; degenerative disc disease of the lumbar spine with radiculopathy to the right lower extremity; post-traumatic stress disorder ("PTSD"); and a history of bipolar disorder. (R. 14).  The ALJ found "little to any objective evidence" of Plaintiff's claim of "disability due to inability to read and write well and memory problems" and determined these claims to be "non-severe." (R. 14, 303). The ALJ further found after "an exhaustive review of the record," that Plaintiff's alleged disability due to schizophrenia was not "medically determinable in this case." (R. 14).  In sum, the ALJ

determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments" in the listings. (R. 14).

After reviewing the opinions of Drs. Morrow, Gillis, Reddy, and Haney, the ALJ determined that there were insufficient findings on examination or diagnostic work-up to confirm the presence of an impairment or combination of impairments that meet or equal in severity the criteria of any listing. (*Id.*). The ALJ found that Dr. Morrow rendered his opinion after, "only examin[ing] [Plaintiff] twice before expressing an opinion of total disability in October 2009 and his examination records did not support his opinion at all." (R. 19, 547-56). The ALJ gave "some weight to Dr. Gillis' opinion as it is consistent with the medical evidence and clinical findings on physical examination, but in regards to [Plaintiff's] mental functioning the opinion appears to be outside the scope of the consultative examination which he performed." (R. 21, 464-67). Additionally, the ALJ gave some weight to both Dr. Reddy's and Dr. Haney's opinions which support "some limitations in [Plaintiff's] physical and mental functioning," but noted Dr. Haney's "assessment of moderate to severe impairment is due to factors outside [his] medical expertise." (R. 21). Utilizing a "special technique" described at 20 C.F.R. §§ 4040.1520(a), and 416.920(a) in assessing the degree of functional limitation as a result of mental impairment, the ALJ found:

> [Plaintiff] has moderate restrictions of activities of daily living, moderate difficulties in maintain social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration or that [Plaintiff's] mental disorders have resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or that [Plaintiff] has a current history of one or more years' inability of function outside a highly supportive living arrangement with an indication of continued need for such an arrangement, or the inability to function independently outside the area of one's own home.

(R. 14-15).  By referring to the state agency psychological consultant's mental assessments in March 2009 and July 2011, the ALJ found "the record supported moderate restrictions . . . [and gave] great weight to these assessments as they [were] consistent with the medical record in [regard] to [Plaintiff's] mental functions." (R. 15).

In the fourth step of the analysis, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), and 416.967(b) except she would be limited to understanding, remembering, and carrying out short and simple instructions, maintaining attention and concentration for two hour periods over and eight-hour workday, causal contact with the general public and coworkers, and gradually well-explained workplace changes. (R. 15).  The ALJ considered all of Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929 and SSR §§ 96-4p, 96-7p. (*Id.*).  Additionally, the ALJ considered medical opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927 and SSR §§ 96-2p, 96-5p, 96-6p, 06-3p." (*Id.*).

The ALJ held that Plaintiff could not perform past relevant work as a mobile home assembler, but considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a).  (*Id.*).  Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists, and therefore, is not disabled as defined in the Social Security Act from February 19, 2009 through the date of his decision. (R. 23).

III.    **Plaintiff's Argument for Reversal**

Plaintiff presents two arguments for reversal: (1) the ALJ failed to evaluate and properly credit her testimony of disabling symptoms in accordance with the Eleventh Circuit Pain Standard, and (2) the ALJ failed to articulate good cause for giving less weight to the opinion of her treating physician, Dr. Morrow.  (Pl's Br. 4, 11).

IV.    **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's

findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied the proper legal standards in reaching that decision.  The court addresses each of Plaintiff's arguments below.

### A.     The ALJ Properly Evaluated the Credibility of Plaintiff's Testimony of Disabling Symptoms in Accordance with the Eleventh Circuit Pain Standard and Social Security Regulations.

Plaintiff initially asserts that the ALJ's evaluation of her credibility is not supported by substantial evidence, and that the ALJ's determination was not in accordance with the Eleventh Circuit Pain Standard.  (Pl.'s Br. 3).  According to the regulations set forth by the Social Security Administration, Plaintiff's statements regarding her alleged disabling pain are not, alone, enough to establish a disability.  *See* 20 C.F.R. § 401.1529(a).  The pain standard is comprised of both a threshold inquiry and a credibility determination.  If a claimant meets the threshold inquiry, an ALJ is called upon to evaluate other factors to determine the credibility of the claimant's allegations of subjective symptoms.  (*Id.*).

The Eleventh Circuit has established a standard to be applied to a claimant's assertion that she is disabled because of pain.  In order for a claimant to satisfy the threshold inquiry, they must present: (1) evidence of an underlying medical condition, and (2) either objective medical evidence confirming the severity of the alleged pain, or that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

After this threshold inquiry is met, if the ALJ discredits a claimant's subjective testimony of disabling pain, the ALJ "must clearly articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt*, 921 F.2d at 1223 (11th Cir. 1991). As part of the analysis used in determining credibility, the ALJ looks at intensity and persistence of the symptoms alleged by the claimant, as well as the extent to which the alleged symptoms affect the claimant's functional limitations. *See* 20 C.F.R. § 404.1529. There are certain determinations that are solely the province of the ALJ and emphatically a determination of credibility is one of those. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Indeed, it is well-established that a reviewing court "will not disturb a properly articulated credibility finding that is supported by substantial evidence." *Strickland v. Comm'r of Soc. Sec.*, 516 Fed. App'x 829, 832 (11th Cir. 2013).

Plaintiff agrees that the ALJ articulated reasons for refusing to credit her testimony; however, she argues that those reasons are not supported by substantial evidence. (Pl's Br. 11). Plaintiff further argues that the "ALJ's conclusions are irrational and wholly inconsistent with the record . . .." (*Id.*). This court disagrees.

The ALJ specifically stated in his decision that he had carefully considered the "*entire* record." (R. 15) (emphasis added). In formulating Plaintiff's RFC, the ALJ gave Plaintiff the benefit of reasonable doubt,[5] and found that "it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors . . . ." (R. 17). In other words, the ALJ relied on the entire record, as well as Plaintiff's subjective complaints in reaching his decision.

---

[5] The ALJ additionally considered Plaintiff's testimony in a prior disability hearing in 2010 combined with the 2012 hearing. (R. 16).

Additionally, Plaintiff's argument that "the ALJ refused to credit Plaintiff's testimony of disabling limitations" (Pl's Br. 5) is simply not supported by the record.  Plaintiff states that the "ALJ correctly found Plaintiff's medically determinable impairments could reasonably be expected to cause [her] alleged symptoms." (*Id.*).  Plaintiff takes issue not with the ALJ crediting the testimony, but rather with the weight the ALJ gave to the testimony.  The ALJ noted that Plaintiff's testimony suggests she is able to "live independently in her own residence and care for her personal needs without assistance and do some household chores such as laundry." (R. 17).

Also, Plaintiff contends that the ALJ did not properly characterize the medical evidence with regard to her physical limitations concerning her wrist.  (Pl's Br. 6).  However, the record shows the ALJ found that Plaintiff has "traumatic arthritis of right wrist status post multiple surgeries" and for that reason Plaintiff was only able to perform "light work." (R. 14, 22).  The objective medical evidence shows that Plaintiff's pain was controlled with medication. (R. 17, 568-71). In fact, Plaintiff reported decreasing pain levels in January, April, and June 2012. (R. 18, 633-35).  The court concludes the ALJ's finding is supported by substantial evidence, and the ALJ's conclusion that the medical record "does not bolster [Plaintiff's] credibility with respect to the degree of her pain and other subjective complaints" is also well supported. (R. 18).

To be clear, there is no requirement that the ALJ refer specifically to each and every piece of evidence in the record, so long as the determination is not an overly broad rejection. *Dyer*, 395 F.3d at 1211 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  In other words, it is not error when an ALJ does not specifically refer to each pain scale, test result, or subjective complaint contained in the record.  Here, the ALJ listed and analyzed numerous details based on medical evidence found in the entire record and carefully evaluated

Plaintiff's subjective complaints; the fact that he did not micro-analyze each piece of evidence does not mean his findings are unsupported by substantial evidence.

In addition, the ALJ found Plaintiff's allegations of pain not completely credible because her own statements were inconsistent with such a conclusion. Plaintiff argues that the ability to perform regular daily activities does not necessarily preclude a finding of disability. (Pl's Br. 7). She is, of course, correct.  Participation in everyday activities, such as housework, does not itself preclude a disability finding.  *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  The ALJ, however, did not rely upon Plaintiff's performance of daily activities, in and of themselves, in determining that she is not disabled.  He also considered both the medical evidence and other factors, such as Plaintiff's mother's testimony,[6] in concluding that Plaintiff's claims of disability are not fully supported by the record evidence.  (R. 16).

For instance, Plaintiff claimed that in January 2009 that she would go days without bathing, did not prepare her own meals, became nervous and upset around other people, and could only walk a few feet before she needed to rest. (R. 16, 299-307).   However, Plaintiff's testimony at the hearing was markedly different.  She testified that she walks to her mother's house twice a week, goes to NA meetings two times per week, and was never fired for problems in getting along with others. (R. 16, 37, 40).   These activities of Plaintiff are relevant to the extent they show a contradiction between Plaintiff's testimony and her claims.   *See Parks v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 194, 197 (11th Cir. 2009) (holding that the ALJ's rejection of claimant's subjective pain testimony was based on substantial evidence, because the effectiveness of claimant's medication and her ability to perform chores, drive, and attend church were inconsistent with her testimony of debilitating pain.).

---

[6] Plaintiff's mother completed a "Function Report - Adult - Third Party on January 20, 2009 in which she wrote that Plaintiff does not get out bed much, gets anxious, and cannot sleep unless she takes her medicine. (R. 288-97).

Because the ALJ articulated adequate reasons for discrediting Plaintiff's subjective complaints, in accordance with the factors set forth in 20 C.F.R. §§ 404.1529, and 416.929, the court finds there is substantial evidence to support his determination on Plaintiff's credibility.

**B.    The ALJ Properly Articulated Good Cause for Giving Less Weight to the Opinion of Plaintiff's Treating Physician.**

Plaintiff contends that the ALJ erred by failing to articulate good cause for according less weight to the opinion of Dr. Morrow. (Pl. Br. 11). Specifically, the ALJ stated he gave little weight to Dr. Morrow's opinion because the objective medical evidence and clinical findings do not support the severity of physical impairments as expressed in the opinion and that Dr. Morrow "appears to have relied quite heavily on the subjective report of symptoms [by Plaintiff] and seemed to uncritically accept as true [Plaintiff's claims]."  (R. 20).  The record contains substantial evidence to support the ALJ's opinion, and Plaintiff's argument to the contrary is unpersuasive.

The Eleventh Circuit has made it clear that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis*, 125 F.3d at 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  Failure of the ALJ to "clearly articulate" good cause for discounting the treating physician's opinion constitutes reversible error.  (*Id.*).  "Good cause" is shown when the opinion of the treating physician is unaccompanied by objective medical evidence or is inconsistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  In addition, good cause is found where the treating physician's opinion is "inconsistent with [her] own medical records."  *Lewis*, 125 F.3d at 1440 (11th Cir. 1997) (citing *Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v.*

*Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). Medical experts are considered experts in their respective fields, as well as in Social Security disability programs. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p, 1996 WL374180. Opinions of medical experts may be given greater weight than opinions of treating and examining sources as long as there is substantial evidence in the record to support the opinion. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1527(e)(2)(i) and (iii), 416.912(b)(6), 416.927(e)(2)(i) and (iii); SSR 96-6p WL374180; *Crawford*, 363 F.3d at 1159-60 (11th Cir. 2004); *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x. 869, 872-74 (11th Cir. 2011).

The ALJ applied the correct legal standards. First, the ALJ clearly articulated that he gave little weight to Dr. Morrow's opinion because "the objective medical evidence and clinical findings do not support the severity of physical impairments as expressed in [his] opinion" such as Plaintiff being unable to do repetitive motions activities, the need for Plaintiff to take frequent rest periods, and the inability of Plaintiff to engage in stressful situations. (R. 20). Taking into consideration Dr. Morrow's records as a whole, the ALJ correctly afforded little weight to the opinion of Plaintiff's treating physician.

Additionally, the ALJ considered the medical examinations by Drs. Gillis, Reddy, and Haney. He gave some weight to Dr. Gillis's opinion (and indeed it is consistent with the medical evidence and clinical findings on physical examination); but, with regard to Plaintiff's mental functioning, he concluded Dr. Gillis's "opinion appears to be outside the scope of the consultative examination which he performed." (R. 21). Dr. Reddy examined Plaintiff and concluded that Plaintiff would physically be able to work, but that a psychological evaluation was needed to determine if any mental impairment affected Plaintiff. (R. 21, 591). Dr. Haney then examined Plaintiff and opined that Plaintiff's ability to function in most jobs was

moderately to severely impaired. (R. 595).  The ALJ gave some weight to both Dr. Reddy's and Dr. Haney's opinions, noting that "some limitations in [Plaintiff's] physical and mental functioning." (R. 21).  However, he also observed Dr. Haney's "assessment of moderate to severe impairment is due to factors outside [his] medical expertise." (*Id*.).

In contrast to the weight given to the opinions of Drs. Morrow, Gillis, Reddy, and Haney, the ALJ gave the opinions of Drs. Rankart and Estock great weight, citing their opinions as being consistent with the record as a whole demonstrating Plaintiff has "no more than moderate mental limitations." (R. 21).  In his decision, the ALJ extensively listed details from the medical record and determined that the opinions of the non-treating physicians were more consistent with the record than the opinions of the treating physicians. (R. 20-21).  After careful review of the record, this court finds there is substantial evidence to support the ALJ's determinations regarding the weight which the ALJ afforded (and, on the other hand, did not afford) to the treating and the non-treating physicians.

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 24, 2015.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE